## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

| | | |
|---|---|---|
| MICHELE Y. DAVIS, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| V. | ) | Civil Action No.: _____ |
| | ) | |
| DIVERSIFIED RESOURCES, INC. | ) | JURY TRIAL DEMANDED |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

## COMPLAINT

Plaintiff Michele Y. Davis ("Plaintiff") respectfully submits the following Complaint:

## INTRODUCTION

1.     Plaintiff is a former employee of Diversified Resources, Inc. ("Defendant" or "Diversified").  Plaintiff asserts claims of disability discrimination, hostile work environment, failure to accommodate, and retaliation in violation of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101 *et seq.* ("ADA").  Additionally, Plaintiff asserts claims of interference and retaliation in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA").  Plaintiff also asserts state law claims of intentional infliction of emotional distress and punitive damages pursuant to O.C.G.A. § 51-12-5.1 to correct the unlawful employment practices alleged herein.

2.     Plaintiff seeks declaratory and injunctive relief, back pay and lost benefits, front pay, liquidated damages, compensatory damages, punitive damages, and attorneys' fees and costs of litigation to remedy these civil rights violations.

1

## JURISDICTION AND VENUE

3.     Plaintiff's claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(a).  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.     This Court is a proper venue for Plaintiff's claims under 28 U.S.C. § 1391(b) and (c), as a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## THE PARTIES

5.     Plaintiff is a resident of Lenox, Georgia and submits herself to the jurisdiction of this Court.

6.     Defendant Diversified Resources, Inc. is a domestic profit corporation licensed to conduct business in the State of Georgia.

7.     At all times relevant to this action, Defendant conducted business, maintained facilities, and derived substantial revenue in the State of Georgia and is subject to the jurisdiction and venue of this Court.

8.     Defendant may be served with process by serving a copy of the Complaint and Summons on its registered agent, Keith Genteman, 990 Belmont Road, Athens, GA 30605.

9.     Defendant is an employer as defined by the ADA and FMLA.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10.     Plaintiff has satisfied all administrative prerequisites to perfect her claims of disability discrimination, hostile work environment, failure to accommodate, and retaliation under the ADA.  Specifically, she timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

11.     Plaintiff has now received the Notice of Right to Sue for her claims under the ADA within the last ninety (90) days.

## FACTUAL ALLEGATIONS

12.     Diversified offers community-based programs and services designed to help disabled and older adults remain in their homes and delay or prevent nursing home placement.

13.     Plaintiff began her employment with Diversified on or about March 4, 2020, as a Community Care Services Program ("CCSP") Care Coordinator.

14.     Plaintiff reported to CCSP Supervisor, Joy Pate.

15.     In November 2020, Plaintiff was forcefully raped by three men that entered her home.

16.     Following the rape, Plaintiff was diagnosed with severe Post Traumatic Stress Disorder ("PTSD"), anxiety disorder, and Major Depressive Disorder.

17.     Immediately following the rape, Plaintiff disclosed the rape and her diagnosis to Ms. Pate as she had to take a leave of absence due to her medical conditions.

18.     A few hours after Plaintiff return to work following her leave of absence, Ms. Pate told Plaintiff that she should not be at work and that she needed to go back out on another leave of absence.  However, Plaintiff had been fully released to work and felt that establishing a work routine would help her with her medical conditions. Nonetheless, because Plaintiff was not given the option of returning back to work, Plaintiff went on another leave of absence.

19.     Following Plaintiff's leave of absence, Plaintiff was subjected to an extremely hostile, vulgar and inappropriate workplace.

20.     Specifically—knowing that Plaintiff had been forcefully raped by three men—Ms. Pate and other employees made sexual references, spoke about sex on a consistent basis, watched pornography, and made sexual jokes.

21.     For example, a few days after Plaintiff came back from her leave of absence, on or about December 20, 2020, three employees did a completely inappropriate and vulgar holiday skit about sweaty balls, knowing that just a month before Plaintiff had been raped.

22.     The skit titled "Scheweddy Balls Christmas 2020!" was even posted to Facebook by an employee.

23.     During the skit, Plaintiff approached Ms. Pate and requested that the team tone down their sexual jokes and references given that she was suffering from severe PTSD and other medical conditions as a result of the rape.

24.     Without considering Plaintiff's accommodation request whatsoever, Ms. Pate responded brashly by saying, "Just get behind your desk, be a good girl and sit down."

25.     Additionally, Plaintiff's office mate, Brandi Slocumb, who was good friends with Ms. Pate, continually made sexual jokes and references and even described having sexual intercourse with her boyfriend.

26.     On another occasion, again, knowing that Plaintiff had been raped by three men, Ms. Pate asked her team if they had ever played "three dicks at one time."  When Ms. Slocumb told Ms. Pate, "Joy…Michele has not even gone to the bathroom yet," Ms. Pate responded, "Oops, I forgot Michele was sitting there."

27.     These jokes were malicious, harassing and intended to harm Plaintiff knowing that she was suffering from severe PTSD and other medical conditions as a result of the rape.

28.     Ms. Pate did nothing to stop this behavior and to the contrary, was the instigator.

29.     In March 2021, during a meeting regarding Plaintiff's performance evaluation, Tanya Altier, Human Resources Manager, continued to bring up Plaintiff's rape and downplay it. Ms. Altier told Plaintiff, "Do not let your rape define you.  You are not the only one that has had a traumatic experience.  I used it to better myself."

30.     In April 2021, Plaintiff went on a trip with her family and stepped on something in the ocean and got cellulitis/necrotizing fasciitis in her foot (staph infection).

31.     Plaintiff was admitted to the hospital and almost had to have her foot amputated. Plaintiff had two foot surgeries in order to save her foot.

32.     After Plaintiff's hospital stay, Plaintiff was told by her doctor that she could return to work if she kept her foot elevated.  Plaintiff sent Ms. Pate a text message telling her that the doctor had released her to return to work but that she would need the accommodation of elevating her foot at work.

33.     At the time, CCSP Care Coordinators were not visiting clients in person due to the COVID-19 pandemic.  Therefore, her request should have been granted.

34.     In fact, Ms. Slocumb had a foot injury and was allowed to come to work in crutches. Additionally, on another occasion, Ms. Slocumb came to work in a wheelchair and Ms. Pate had to help her to the restroom and assist her while in the restroom.  Ms. Slocumb was even allowed to lay on the couch in Ms. Pate's office to make phone calls and use her computer on her lap.

35.     Both Ms. Pate and Ms. Altier told Plaintiff that she could not return to work unless she was released to "full duty" with "no limitations."

36.     Neither Ms. Pate nor Ms. Altier made any effort to engage in the interactive process with Plaintiff as required by the ADA.

37.     A day or two after Plaintiff returned to work following her foot injury, Plaintiff was issued a disciplinary action for various alleged performance issues including her quality of work not meeting standard of promptness and violations of DRI's policy regarding electronic communication and internet use.

38.     However, the disciplinary action was issued for reasons that were false and for conduct for which Ms. Pate had approved.  For example, although the disciplinary action stated that Plaintiff had used the Company computer to do her schoolwork, Ms. Pate had told Plaintiff that if she agreed to stay until 5PM, which meant she had to take an hour lunch (instead of the 30-minute lunch break other employees were given), she could do her schoolwork during that one-hour lunch break.  When Plaintiff told Ms. Pate that she did not think she was allowed to use her Company computer for personal matters, Ms. Pate told Plaintiff that she was the boss.

39.     Moreover, Ms. Pate was well aware that other employees that reported to her were using their Company computer for non-work-related matters. For example, it was well known that one of the employees, who was Plaintiff's old office mate, did very little work and watched Netflix and YouTube all day on her computer.  That same employee also used her Company computer to look at pornography and buy marijuana on Facebook messenger.  However, that employee never received a disciplinary action for using her Company computer for personal matters or for failing to do her work, despite at least one complaint from a coworker about that employee failing to do any work.

40.     Additionally, Ms. Pate herself was using her Company computer for non-work-related matters and encouraging others to do the same.  In fact, Ms. Pate had a side business, YK Trading, and would encourage her team to order jewelry and other accessories.

41.     Although the disciplinary action also contained several alleged issues with Plaintiff's work performance, those issues were similarly baseless.

42.     Plaintiff's charts were audited by Ms. Slocumb, who was good friends with Ms. Pate and was contributing to the hostile work environment, discrimination and retaliation Plaintiff was experiencing.

43.     It was not common practice to audit a Care Coordinator's charts.

44.     The issues identified in Plaintiff's charts were inaccurate, included issues that other Care Coordinators were handling in the same manner, and included issues that were from Plaintiff's predecessor (Plaintiff inherited charts from another Care Coordinator named Kristi Lathum who was terminated for performance).

45.     Before Plaintiff's rape, she was praised for her client care and attentiveness to her clients which is why she had such a high caseload as compared to her coworkers.  In fact, Ms. Pate would use Plaintiff to help clear her coworkers' caseload.  Plaintiff carried a caseload of 87 while other Care Coordinators' caseloads were around 60.

46.     Moreover, during the meeting to discuss the disciplinary action, Plaintiff was again subjected to a completely inappropriate and hostile behavior.  Specifically, Ms. Altier was again extremely aggressive and unprofessional and reiterated to Plaintiff not to let her rape define her, which not only had nothing to do with the disciplinary action, but also had an extreme impact on Plaintiff's mental health.

47.     Not only was Ms. Altier yelling at Plaintiff, she was also slamming her hands down on the table and pointing her finger at Plaintiff as if she was a child.

48.     Because of the open workspace and the paper-thin walls, everyone in the entire office could hear Ms. Altier yelling.

49.     Ms. Altier's completely inappropriate conduct aggravated Plaintiff's medical conditions and her doctor ordered that she not return to work.

50.     On or about May 20, 2021, Plaintiff went on another leave of absence due to her mental conditions as well as her foot-related conditions.

51.     On or about July 12, 2021, Plaintiff was terminated from Diversified for allegedly exhausting her FMLA leave and for failing to contact Diversified after only one contact attempt to Plaintiff.

52.     Surprisingly, in the voicemail Ms. Altier left for Plaintiff, she did not state that the call was in any way related to her exhausting FMLA leave or the possibility of having her employment terminated if she did not respond.

53.     As Diversified was well aware, Plaintiff was recovering from foot surgeries.

54.     Had Plaintiff been allowed to return to work with her foot elevated, as the doctor had ordered, after Plaintiff first returned to work following her foot condition, she would have had more FMLA leave as she would not have had to take extended FMLA leave for her foot.

**COUNT I**
**Disability Discrimination in Violation of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101 *et seq.***

55.     Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

56.    At all times relevant hereto, Defendant Diversified has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADAAA.

57.    At all times relevant hereto, Plaintiff is an individual with a disability as defined under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)(A).

58.    At all times relevant hereto, Plaintiff is an individual with a disability as defined under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)(B) inasmuch as she has a record of an impairment as defined by the Act.

59.    At all times relevant hereto, Plaintiff is an individual with a disability as defined under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)(C) inasmuch as she was regarded as a person with an impairment as defined by the Act.

60.    Defendant Diversified is, and at all times relevant to this litigation was, aware of Plaintiff's disability and history and record of disability.

61.    Plaintiff is, and at all times relevant hereto was, a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111(8) and able to perform the essential function of her job.

62.    Defendant Diversified discriminated against Plaintiff in violation of the ADA by taking adverse actions against her, including but not limited to: (a) forcing Plaintiff to go on leaves of absences due to her medical conditions; (b) disciplining Plaintiff under false pretenses; and (c) terminating her employment.

63.    Defendant Diversified's actions amount to a violation of Section 102 of the ADAAA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability.

64.     As a direct and proximate result of Defendant Diversified's intentional discrimination, the Plaintiff has suffered out-of-pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, in an amount to be established at trial.

65.     In addition, Defendant Diversified's actions have caused, and continue to cause, the Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

66.     Moreover, Defendant Diversified's actions have caused stress that has aggravated Plaintiff's medical condition and caused increased medical bills, in an amount to be established at trial.

### COUNT II
**Hostile Work Environment in Violation of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101 *et seq.***

67.     Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

68.     Plaintiff was subjected to a hostile work environment that was severe and pervasive, for which Defendant is liable.

69.     Defendant violated Plaintiff's rights under the ADA by, among other things, failing to take immediate and appropriate action in response to a hostile work environment of which the employer knew.

70.     Defendant violated Plaintiff's rights under the ADA by, among other things, failing to prevent her from being subjected to unwelcome, inappropriate and vulgar sexual comments, jokes, and skits and failing to take reasonable preventative or corrective measures with respect to the unlawful conduct.

71.    The unlawful hostile work environment culminated in a tangible employment action, specifically, termination.

72.    As a direct and proximate cause of Defendant's actions, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, out of pocket expenses, attorney's fees and costs, humiliation, and other indignities.

73.    Defendant undertook its actions intentionally and maliciously with respect to Plaintiff and her federally protected rights, and undertook its conduct recklessly with respect to Plaintiff and her federally protected rights, entitling her to recover compensatory and punitive damages against it.

**<u>COUNT III</u>**
**Failure to Accommodate in Violation of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101 *et seq.***

74.    Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

75.    Plaintiff was, with or without a reasonable accommodation, capable of performing the essential functions of her job.

76.    Defendant discriminated against Plaintiff based upon her disability by refusing her accommodation request.

77.    In November 2020, Plaintiff was forcefully raped by three men that entered her home.

78.    Following the rape, Plaintiff was diagnosed with severe Post Traumatic Stress Disorder ("PTSD"), anxiety disorder, and Major Depressive Disorder.

79.    Immediately following the rape, Plaintiff disclosed the rape and her diagnosis to Ms. Pate as she had to take a leave of absence due to her medical conditions.

80.     A few days after Plaintiff came back from her leave of absence, on or about December 20, 2020, three employees did a completely inappropriate and vulgar holiday skit about sweaty balls, knowing that just a month before Plaintiff had been raped.

81.     The skit titled "Scheweddy Balls Christmas 2020!" was even posted to Facebook by an employee.

82.     During the skit, Plaintiff approached Ms. Pate and requested that the team tone down their sexual jokes and references given that she was suffering from severe PTSD and other medical conditions as a result of the rape.

83.     Without considering Plaintiff's accommodation request whatsoever, Ms. Pate responded brashly by saying, "Just get behind your desk, be a good girl and sit down."

84.     In April 2021, Plaintiff went on a trip with her family and stepped on something in the ocean and got cellulitis/necrotizing fasciitis in her foot (staph infection).

85.     Plaintiff was admitted to the hospital and almost had to have her foot amputated. Plaintiff had to have two foot surgeries in order to save her foot.

86.     After Plaintiff's hospital stay, Plaintiff was told by her doctor that she could return to work if she kept her foot elevated.  Plaintiff sent Ms. Pate a text message telling her that the doctor had released her to return to work but that she would need the accommodation of elevating her foot at work.

87.     At the time, CCSP Care Coordinators were not visiting clients in person due to the COVID-19 pandemic.  Therefore, her request should have been granted.

88.     Because Defendant refused to accommodate Plaintiff, she was forced to take medical leave.  Plaintiff lost pay as a result of said leave.

89.     Additionally, Defendant failed to engage in the interactive process following Plaintiff's alleged exhaustion of her FMLA leave.

90.     As a direct and proximate cause of Defendant's actions, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, out of pocket expenses, attorney's fees and costs, humiliation, and other indignities.

91.     Defendant undertook its actions intentionally and maliciously with respect to Plaintiff and her federally protected rights, and undertook its conduct recklessly with respect to Plaintiff and her federally protected rights, entitling her to recover compensatory and punitive damages against it.

## <u>COUNT IV</u>
**Retaliation in Violation of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101 *et seq.***

92.     Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

93.     Plaintiff engaged in protected conduct by requesting ADA accommodations. Specifically, Plaintiff asked Ms. Pate if the team could tone down their sexual jokes and references given that she was suffering from severe PTSD and other medical conditions as a result of the rape.

94.     Additionally, Plaintiff asked that the Company accommodate her by allowing her to elevate her foot at work following foot surgery.

95.     Defendant denied both requested.

96.     The Defendant retaliated against the Plaintiff for engaging in protected conduct.

97.     Specifically, Plaintiff experienced a hostile work environment in retaliation for her engaging in protected activity.

98.     Moreover, the Defendant issued Plaintiff a disciplinary action and ultimately terminated her employment.

99.     Defendant's actions in retaliating against Plaintiff following her accommodation requests were committed with reckless disregard for her right to be free from discriminatory treatment because of her opposition to discriminatory practices in violation of the ADA.

100.    As a direct and proximate cause of Defendant's actions, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, out of pocket expenses, attorney's fees and costs, humiliation, and other indignities.

101.    Defendant undertook its actions intentionally and maliciously with respect to Plaintiff and her federally protected rights, and undertook its conduct recklessly with respect to Plaintiff and her federally protected rights, entitling her to recover compensatory and punitive damages against it.

## COUNT V
**FMLA Interference in Violation of the Family Medical and Leave Act of 1993, 29 U.S.C. § 2601 *et seq.***

102.    Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

103.    Plaintiff is an "eligible employee" within the meaning of the FMLA in that she had been employed with Defendant for more than 12 months and worked more than 1250 hours in the 12 months preceding her need for FMLA leave.

104.    During all times relevant to this lawsuit, Defendant employed more than fifty (50) employees within seventy-five (75) miles for each working day during each of twenty (20) or more calendar weeks in 2020 through 2021 and was engaged in commerce or was part of an industry affecting commerce, making it an "employer" as defined by the FMLA, 29 U.S.C. § 2611(4)(A).

105.    Plaintiff had a serious health condition as defined by the FMLA.

106.    Defendant forced Plaintiff to take FMLA leave following her foot surgery despite the fact that the doctor had cleared her to return to work with her foot elevated.

107.    Plaintiff was terminated for allegedly exhausting her FMLA leave however, had she not been placed on forced FMLA following her foot injury and allowed to return to work, she would have had additional FMLA leave and would not have been terminated.

108.    Furthermore, Defendant never provided Plaintiff with eligibility and rights and responsibilities notice within five business days of her change in eligibility status.

109.    As a direct and proximate result of the above conduct, Plaintiff suffered lost wages, lost benefits, diminished employment opportunities, front pay, liquidated damages, attorneys' fees and expenses, and other damages, for which Defendant is liable.

**<u>COUNT VI</u>**
**FMLA Retaliation in Violation of the Family Medical and Leave Act of 1993, 29 U.S.C. § 2601 *et seq.***

110.    Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

111.    Plaintiff engaged in, or in good faith believed that she was engaging in statutorily protected activity when she put Defendant on notice that she would need leaves as a result of her serious medical conditions.

112.    Following Plaintiff's request for leave under the FMLA, Defendant took adverse action against Plaintiff and ultimately terminated her employment.

113.    Plaintiff was terminated in retaliation for her protected activity.

114.    Defendant either knew or showed willful and reckless disregard for the matter of whether terminating Plaintiff's employment was prohibited by the FMLA.

115.     As a direct and proximate result of the above conduct, Plaintiff suffered lost wages, lost benefits, diminished employment opportunities, front pay, liquidated damages, attorneys' fees and expenses, and other damages, for which Defendant is liable.

**COUNT VII**
**Intentional Infliction of Emotional Distress**

116.     Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

117.     Plaintiff was forcefully raped by three men that entered her home.

118.     Following the rape, Plaintiff was diagnosed with severe Post Traumatic Stress Disorder ("PTSD"), anxiety disorder, and Major Depressive Disorder.

119.     Knowing about Plaintiff's rape, and her medical conditions stemming from the rape, Defendant intentionally made sexual jokes, comments, and skits in order to aggravate Plaintiff's medical condition.

120.     In addition, on at least two occasions, Ms. Altier brought up the rape, downplayed it, and yelled at Plaintiff that she should not let the rape define her while pointing her finger in Plaintiff's face.

121.     These actions caused significant aggravation to Plaintiff's medical conditions.

122.     An employer is liable for the intentional infliction of emotional distress of an employee when the employer commits and adverse and intentional act toward the employee that is outrageous and beyond simple disciplinary authority.  Further, the employer's outrageous conduct must be so egregious as to shock the conscience of an ordinary individual.

123.     Defendant's actions demonstrate willful misconduct, malice, wantonness, oppression and want of caring raising the presumption of conscious indifference to the consequences of its actions, entitling Plaintiff to punitive damages.

## COUNT VIII
### Punitive Damages O.C.G.A. § 51-12-5.1

124.    Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

125.    Defendant's above-pled actions were willful, malicious, wanton and/or oppressive within the meaning of O.C.G.A. § 51-12-5.1(b).

126.    Additionally, and in the alternative, Defendant's actions display, within the meaning of that statute, an entire want of care indicative of a conscious indifference to its actions' consequences.

**WHEREFORE,** Plaintiff demands a TRIAL BY JURY and the following relief:

(a) declare that Defendant has violated Plaintiff's rights under the federal statutes listed above;

(b) permanently enjoin Defendant from violating, in the future, Plaintiff's rights under the federal statutes listed above;

(c) award Plaintiff full back pay, including all lost pay and benefits, raises, cost of living increases, retirement benefits, and all other lost benefits and compensation reducible to a dollar amount;

(d) award Plaintiff prejudgment interest as required by law;

(e) award Plaintiff compensatory damages for emotional pain and suffering in an amount to be determined by the enlightened conscience of a jury;

(f) award Plaintiff front pay, including all lost future pay and benefits, raises, cost of living increases, retirement benefits, and all other lost benefits and compensation reducible to a dollar amount;

(g) award Plaintiff punitive damages, against Defendant sufficient to punish it for its unlawful conduct and deter it from repeating such conduct in the future, as determined by the enlightened conscience of a jury;

(h) award Plaintiff reasonable attorneys' fees and expenses; and

(i) grant such additional relief as may be just.

Respectfully submitted, this 22nd day of February, 2022.

*s/ Jackie Lee*

Jackie Lee
Georgia Bar No. 419196
LEE LAW FIRM, LLC
1100 Peachtree Street NE, Suite 250
Atlanta, Georgia 30309
Telephone: (404) 301-8973
jackie@leelawga.com

**COUNSEL FOR PLAINTIFF**